sold by the marshal of this district, according to law and custom, for the purposes aforesaid.

In the case of Willendson v. The Försöket [Case No. 17.682], the practice of the court as to foreign seamen, is fully explained.

## Case No. 17,358.

### WEIDE v. GERMANIA INS. CO.

[1 Dill. 441.] 1

Circuit Court, D. Minnesota. 1870.

FIRE INSURANCE—REFUSAL TO ANSWER—FRAUD.

1. Under certain provisions of a fire insurance policy, the refusal of the assured to submit to an examination on oath, or to answer material questions respecting the loss, was considered not to work a forfeiture of the policy, but only not to cause the loss not to be payable until this was done; and such refusal should be pleaded in abatement, and separately from defences in bar.

2. False statements on oath by the assured, with intent to deceive the company, relative to the terms of settlement with other companies having risks on the same property, are material, and will defeat any right on the part of the assured to recover.

3. If the assured, after the loss, with intent to deceive the company, exhibits to it books of accounts containing false entries of a material nature, this is a fraud, and will defeat all right to recover upon the policy.

Action on fire insurance policy. The policy contained the usual condition as to the duty of the assured to give notice of the fire, and to render a particular account of the loss, signed and sworn to by the assured, and to produce a certificate of a magistrate as to the loss, and his opinion as to its bona fides. It was also provided therein that "the assured shall, if required, submit to an examination, under oath, by the company, and produce his books of accounts, vouchers, copies of bills and invoices, and exhibit the same for examination." The policy also provided for an appraisement of the property insured in case of loss by fire. Then followed clauses in the policy in the following words, viz: "And until such proofs, declarations, and certificates are produced, and examination and appraisal permitted, the loss shall not be payable." "All fraud or attempted fraud, or false swearing on the part of the assured, shall cause a forfeiture of all claim under the policy."

Allis, Gilfillan & Williams, for plaintiff.

Storrs, Lamprey, Paul & Brisbin, for defendant.

PER CURIAM (MILLER. Circuit Justice, and DILLON, Circuit Judge, concurring). It was held:

1. Under the above provisions of the policy, that a refusal on the part of the assured, to submit to an examination on oath, or his refusal, on such an examination, to answer material questions respecting the loss, would not

have the effect to cause a "forfeiture." by the assured, of all claim under the policy, but simply to cause the "loss not to be payable." until such examination is submitted to, or such answer given.

2. That a defence under the clause that the assured had thus refused to be examined, or thus to answer questions, is in the nature of a plea in abatement, showing no present cause of action, and should be pleaded separately from the defence of "fraud" or "false swearing" which, if established, is a complete bar to a recovery, at any time, on the policy.

3. Under a plea setting up the defence of "false swearing:" held by the court that false swearing by the assured, either in the preliminary proofs of loss, or in the examination on oath as required by the policy, in a matter material to the rights of the company, with intent to mislead the company, would work a forfeiture of the policy; and false statements by the assured, on such examination, with intent to deceive and mislead the company, relative to the terms of settlement by the assured with other companies which had insured the same property, are material, and will defeat any right to recover under the policy.

4. Under the defence of "fraud," properly pleaded: held that if the assured, after the fire, with intent to deceive the company, exhibited to it books of accounts, in which there were false entries as to the value and amount of the goods insured and claimed to have been burned, this would be a fraud, or an attempt at fraud within the meaning of the policy, and would forfeit all rights thereunder.

NOTE. So in Missouri and Pennsylvania, it is held that the false statement, to work a forfeiture of all claim under the policy, must be willfully made with respect to a material matter, and with intent to deceive the insurer. Marion v. Great Republic Ins. Co., 35 Mo. 148; Franklin Fire Ins. Co. v. Updegraff, 43 Pa. St. 350. Questions of evidence ruled by the supreme court in cases connected with this loss. Insurance Co. v. Weide. 9 Wall. [76 U. S.] 677, 11 Wall. [78 U. S.] 438 [and 14 Wall. (81 U. S.) 375].

WEIGHTMAN (COOKE v.). See Case No. 3,180.

## Case No. 17,359.

### WEIGHTMAN v. QUEEN.

[2 Cranch, C. C. 172.] 1

Circuit Court, District of Columbia. June Term, 1819.

SET-OFF—ASSIGNMENT OF OPEN ACCOUNT.

After the assignment of a claim upon an open account, the debtor cannot, in an action brought for the use of the assignee. set off a claim against the assignor, arising after notice of the assignment.

This suit was brought in the name of John Weightman, for the use of Henry Weightman, upon an open account assigned to the latter.

---

1 [Reported by Hon. John F. Dillon, Circuit Judge. and here reprinted by permission.]

1 [Reported by Hon. William Cranch, Chief Judge.]

The defendant offered to set off a claim against John Weightman, arising since the defendant had notice of the assignment.

Mr. Lear, for plaintiff.
Mr. Jones, for defendant.

THE COURT decided that the defendant could not set off claims accruing after the notice.

———

WEIGHTMAN (ZANTZINGER v.). See Case No. 18,202.

═══

## Case No. 17,360.

### WEIHENMYER et al. v. ARTHUR.

[22 Int. Rev. Rec. 368.]

Circuit Court, S. D. New York. Nov. 3, 1876.

CUSTOMS DUTIES—SLIPPER PATTERNS—EMBROIDERY —BEAD ORNAMENTS—MANUFACTURES OF PAPER—PRINTED MATTER.

[1. Slipper patterns made of cotton canvas embroidered with worsted, and designed to be filled with more embroideries, are dutiable as embroidered manufactures of cotton, and not as manufactures of worsted.]

[2. Slipper cases consisting of cotton canvas embroidered with beads are dutiable as embroidered manufactures of cotton, and not as bead ornaments.]

[3. Perforated cardboard, on which are printed sentences or mottoes to be filled in with embroidery, are manufactures of paper, and not printed matter.]

[4. Cardboard, on which is imprinted in colors an ornamental design or patent for the purpose of showing the method of embroidering the patent upon canvas, is a manufacture of paper.]

[5. Pattern books consisting of sheets of paper stitched or folded together, upon which designs or patterns are printed in colors, are dutiable as printed matter.]

[This was an action by A. Weihenmyer and others against Chester A. Arthur, collector of the port of New York, to recover excessive duties.]

Hartley & Coleman, for plaintiffs.

H. E. Tremain, Asst. U. S. Dist. Atty., for defendant.

SHIPMAN, District Judge. The court charges the jury as follows: The plaintiffs imported into the port of New York in the year 1874 three distinct classes of goods, which are mentioned in this bill of particulars, and upon each of which they seek to recover an alleged excess of duties which were paid to the collector under protest. The prerequisites which are required by the statute as necessary to sustain a suit against the collector have been duly complied with by the plaintiffs. The first class of goods is that commonly known as slipper patterns. They are made of cotton canvas, embroidered with the needle with worsted, or with worsted and silk, and are designed to be filled with more or less additional embroidery, and to be worked or manufactured into gentlemen's slippers. The only witness who testifies on the subject says that

the articles come under the general commercial term of embroideries, and that the term also includes articles of cotton, linen, or silk for ladies' and children's wear. The specific name of this article is slipper pattern. The plaintiffs contend that they are properly dutiable under the following clause of the Revised Statutes, approved June 22, 1874: "Embroidery—manufactures of cotton, linen, or silk, if embroidered or tamboured in the loom, or otherwise by machinery, or with the needle, or other process, not otherwise provided for, 35 per cent. ad valorem." The collector claims that the goods have been properly assessed under the clause of the same statute which provides a duty upon "flannels, blankets, hats of wool, knit goods, balmorals, woollen and worsted yarns, and all manufactures of every description, composed wholly or in part of worsted, the hair of the alpaca goat, or other like animals, except such as are composed in part of wool, not otherwise provided for." It is not necessary to consider whether the embroidery clause, which was originally enacted March 2, 1861, was or was not in force at the time of the revision, because section 5595 of the Revised Statutes provides as follows: "The foregoing seventy-nine titles embrace the statutes of the United States, general and permanent in their nature, in force on the first day of December, 1873, as revised and consolidated by commissioners appointed under an act of congress, and the same shall be designated and cited as the Revised Statutes of the United States." It is manifest that the embroidery clause was, at the time of the importation, a part of the tariff laws of the country. Neither is it necessary for me to determine whether the term "manufactures of every description, composed wholly or in part of worsted," is confined to a textile fabric of which worsted is a portion, and of the same class as the articles specifically mentioned in the worsted section, because I assume that, in the absence of a clause of the statute more specifically providing for articles of cotton, embroidered with worsted by the needle, such articles would be embraced in the worsted sections. Assuming therefore that, unless otherwise provided for, these articles should be properly classified as worsted goods, it seems to me that a more specific and definite classification has been made of these goods, in the embroidery clause, than in the worsted section. They are manufactures of cotton, and are embroidered with the needle, and do come within the general commercial term of embroidery, and are in ordinary language embroidered goods. The embroidery is their distinctive peculiarity. I am therefore of opinion that congress, after providing generally for worsted articles, intended to embrace manufactures of cotton, linen, or silk, if embroidered with any material save metal, in another class, and provides still another classification for articles embroidered with metal.

The second class of goods which was imported, consisted of slipper cases, which are